1  ROB BONTA
   Attorney General of California
2  R. MATTHEW WISE
   JOHN D. ECHEVERRIA
3  Supervising Deputy Attorneys General
   KEVIN L. QUADE
4  Deputy Attorney General
   State Bar No. 285197
5   1300 I Street, Suite 125
    P.O. Box 944255
6   Sacramento, CA 94244-2550
    Telephone: (916) 210-7693
7   Fax: (916) 324-8835
    E-mail: Kevin.Quade@doj.ca.gov
8  *Attorneys for Defendant Attorney General Rob Bonta*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GARY R. SANCHEZ,**<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>**ROB BONTA, in his official capacity as Attorney General of the State of California,**<br><br>　　　　　　　　　　Defendant. | 24-cv-767-RSH-MSB<br><br>**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**<br><br>Date:　　　　July 29, 2024<br>Courtroom:　3B<br>Judge:　　　The Honorable Robert S. Huie<br>Trial Date:　n/a<br>Action Filed:　April 29, 2024 |

1

# INTRODUCTION

In his opposition to the motion to dismiss, Plaintiff argues not only that possession of firearm silencers is presumptively protected by the Second Amendment, but also that the history and tradition of firearms regulation fails to substantiate the constitutionality of California's ban on such devices. He is mistaken on both fronts. As explained in the motion and below, possession of silencers is not covered by the text of the Second Amendment, and even if it were, California's statutory prohibition fits comfortably within the principles that emerge from a long history of legislative restrictions on the possession of exceedingly dangerous weapons and accessories. The Complaint fails to a state a viable claim for relief and should be dismissed without leave to amend.

# ARGUMENT

## I. PLAINTIFF CANNOT ESTABLISH THAT SILENCERS ARE PRESUMPTIVELY PROTECTED BY THE SECOND AMENDMENT

Plaintiff maintains that the possession of firearm silencers is covered by the text of the Second Amendment at the first step of the *Bruen* analysis. ECF No. 13 at 2; *see New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022). As detailed in the motion, *see* ECF No. 11-1 at 14-15, the historical understanding of the Second Amendment's term "Arms" is limited to "'[w]eapons of offence, or armour of defence,'" *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008) (quoting 1 Dictionary of the English Language 106 (4th ed.)), and "'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another,'" *id.* (quoting 1 A New and Complete Law Dictionary). A silencer does not fit within these definitions. The device is not a weapon. It has no intrinsic utility for offensive or defensive use. A silencer simply diminishes or muffles the report of an otherwise operable firearm. *See* Cal. Penal Code § 17210. Indeed, the vast majority of judicial decisions rejecting Second Amendment challenges in the

silencer context have done so because the device does not constitute an "Arm[]" under the Constitution's plain text. *See* ECF No. 11-1 at 16-17 (cataloging cases).[1]

Plaintiff posits that silencers are nevertheless protected because they are capable of being used to the purported benefit of a shooter in offensive and defensive situations. ECF No. 13 at 2. He asserts that a silencer allows a shooter to fire from a "protective [and] hidden position," maintains the shooter's "ability to hear what is going on," and "reduce[s] recoil and muzzle flash thus improving marksmanship." *Id.* But even assuming the factual accuracy of these allegations, such benefits do not support Plaintiff's argument that a silencer is a protected "Arm[]." As the Ninth Circuit has repeatedly recognized, "'the Second Amendment does not elevate convenience and preference over all other considerations.'" *B & L Prods., Inc. v. Newsom*, 104 F.4th 108, 119 (9th Cir. 2024) (quoting *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 680 (9th Cir. 2017) (en banc)). Even if a silencer alters the experience of firing a gun, none of the purported benefits identified by Plaintiff transform the accessory into a weapon that can be "useth in wrath to cast at or strike another" for "ordinary self-defense." *Heller*, 554 U.S. 570, 581; *accord Bruen*, 597 U.S. at 60. Nor is a silencer necessary to operation of a firearm for purposes of armed self-defense. *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967-68 (9th Cir. 2014) (Second Amendment right encompasses regulations on ammunition).

Plaintiff also argues that silencers are protected because they are "'in common use for lawful purposes.'" ECF No. 13 at 2-3 (quoting *Heller*, 554 U.S. at 571). He points specifically to the "well over 200,000" silencers that have been registered with the federal government under the National Firearms Act. *Id.*; *see* 26 U.S.C. § 5861(d). Plaintiff's focus on possession statistics, however, ignores the Supreme Court's repeated clarifications that individual self-defense is "'the *central*

---

[1] This body of case law constitutes a sizeable subset of the cases reflecting judicial consensus that silencers are not protected by the Second Amendment.

*component* of the Second Amendment right itself.'" *Bruen*, 597 U.S. at 32 (quoting *Heller*, 554 U.S. at 599). To that end, *Bruen* explicitly described the "common use" inquiry as an evaluation of whether the weapon at issue is "'in common use' today for *self-defense*," not simply whether a device is statistically common. *Bruen*, 597 U.S. at 32 (emphasis added); *accord United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023).

Accordingly, the asserted prevalence of silencers used for lawful purposes throughout the country is of minimal relevance to the "common use" inquiry. In making that determination, a court looks to the objective features of the item in question to determine whether it is commonly used as a "self-defense weapon." *Heller*, 554 U.S. at 629. Here, the objective characteristics and function of a silencer bears little connection to self-defense, let alone evidence common use for that purpose. Again, the device is not a weapon and has no direct utility for defense in the context of a confrontation. Plaintiff cannot plausibly allege that silencers, even if possessed in large numbers, are in common use to facilitate armed self-defense.

Nor does the number of silencers possessed throughout the United States negate the device's dangerous and unusual character. As explained in the motion, *see* ECF No. 11-1 at 21, the term "unusual" in the phrase "dangerous and unusual" is part of a hendiadys to describe a type of instrument that may be constitutionally banned. *See Bruen*, 597 U.S. at 21; *Heller*, 554 U.S. at 627. It concerns the item's heightened "level of lethality or capacity for injury," not the item's prevalence in society. *Nat'l Ass'n for Gun Rights v. Lamont*, 685 F. Supp. 3d 63, 90 (D. Conn. 2023). As multiple courts have held, and common sense dictates, silencers carry an unusually high capacity for lethality. *See* ECF No. 11-1 at 22 (cataloging cases). Indeed, the factual allegations in Plaintiff's opposition tend to prove the point. A shooter who uses a silencer to "reduce[]" sound and muzzle flash, allowing him to fire from a "protective [and] hidden position," *see* ECF No. 13 at 2, makes it

exceedingly more difficult for potential victims to flee from the gunfire and for law enforcement to locate and neutralize the shooter. *See United States v. Comeaux*, 2024 WL 115929, at *3 (W.D. La. Jan. 10, 2024).

Because Plaintiff's constitutional challenge to California's ban on silencers fails every aspect of *Bruen*'s step-one analysis, this Court need go no further and should reject Plaintiff's Second Amendment claim at the threshold. *Bruen*, 597 U.S. at 18.

## II. CALIFORNIA'S PROHIBITION ON SILENCERS IS CONSISTENT WITH THIS NATION'S HISTORY AND TRADITION OF FIREARMS REGULATION

Plaintiff argues that California's prohibition on possession of silencers is contrary to the country's history and tradition. ECF No. 13 at 3. He contends that the *Bruen* inquiry into historical regulations is confined to the time around 1791 and 1868, when the Second and Fourteenth Amendments were ratified, and that weapons regulations from these time periods are not "relevantly similar" and, thus, do not establish the constitutionality of the State's prohibition. *Id.* at 3-5.

Plaintiff's analysis is inconsistent in every regard with the Supreme Court's decision in *United States v. Rahimi*, 602 U.S. __, 144 S. Ct. 1889 (2024). In *Rahimi*, by an 8-1 vote, the Supreme Court rejected a Second Amendment challenge to 18 U.S.C. § 922(g)(8)(C)(i), which prohibits individuals subject to certain domestic violence restraining orders from possessing a firearm. 144 S. Ct. at 1903. *Rahimi* reiterated that "'the right secured by the Second Amendment is not unlimited,'" does not "sweep indiscriminately," and is "not a right to keep and carry any weapon whatsoever." *Id.* at 1897. The Court recognized that "some courts have misunderstood the methodology of *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and *District of Columbia v. Heller*, 554 U.S. 570 (2008), which "were not meant to suggest a law trapped in amber." *Id*. It criticized the Fifth Circuit (and the dissenting Justice) for committing the "error[]" of "read[ing] *Bruen* to require a 'historical twin' rather than a 'historical analogue.'" *Id*. at 1903;

5

*see also id.* at 1925 (Barrett, J., concurring) ("[I]mposing a test that demands overly specific analogues has serious problems.").

The Court also explained that "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Id*. at 1898 (majority opinion); *see also id*. at 1925 (Barrett, J., concurring) ("'Analogical reasoning' under *Bruen* demands a wider lens: Historical regulations reveal a principle, not a mold."). In ascertaining those principles, moreover, it is appropriate to consider post-ratification laws and practices. *See, e.g., id*. at 1900 (majority opinion); *id*. at 1916 (Kavanaugh, J., concurring) ("post-ratification history" can "be important for interpreting vague constitutional text and determining exceptions to individual constitutional rights").

Applying the appropriate methodology, the *Rahimi* Court had "no trouble concluding" that the historical analogues invoked by the government were sufficient to justify the challenged law, *id*. at 1902 (majority opinion), even though those analogues were "by no means identical" to section 922(g)(8)(C)(i), *id*. at 1902; *see also id* at 1897-98 ("[T]he Second Amendment permits more than just those regulations identical to ones that could be found in 1791."). Among those analogues, the Court relied on territorial regulations, which confirms they are appropriately relied on in *Bruen*'s historical analysis. *Id*. at 1900 (citing *Bruen*, 597 U.S. at 56 & n.23).

In her concurrence, Justice Barrett outlined two "serious problems" with an overly strict approach to *Bruen*'s historical analysis: (1) it "forces 21st-century regulations to follow late-18th-century policy choices, giving us 'a law trapped in amber'" and (2) "it assumes that founding-era legislatures maximally exercised their power to regulate, thereby adopting a 'use it or lose it' view of legislative authority." *Id*. at 1925 (Barrett, J., concurring); *see also id*. at 1905 (Sotomayor, J., concurring) (recognizing that under the dissent's more rigid approach, "the legislatures of today would be limited not by a distant generation's determination

6

that such a law was unconstitutional, but by a distant generation's determination failure to consider that such a law might be necessary")

As explained in the motion, and contrary to Plaintiff's arguments, a review of the pertinent history and tradition demonstrates that California's ban on silencers fits comfortably within a well-established and enduring principle that states may restrict or ban altogether the possession of certain weapons or items that pose a heightened danger to society, especially when they are prone to criminal misuse. *See* ECF No. 11-1 at 23-30. These "relevantly similar" historical analogues range from the English Crown's banning of launcegays, pocket pistols, and crossbows, *see Bruen*, 597 U.S. at 41-42; *see, e.g.*, 7 Rich. 2, ch. 13 (1383); 33 Hen. 8, ch. 6, §§ 1-2, 18 (1541); and colonial era bans on dangerously configured weapons, like trap guns, *see* 1763-1775 N.J. Laws 346, ch. 539, § 10; to early nineteenth century bans on the sale and possession of slungshots, *see, e.g.*, 1849 N.Y. Laws 403-404, ch. 278, §§ 1-2; 1849 Vt. Acts & Resolves 26, No. 36, §§ 1-2; 1850 Mass. Gen. Stat. ch. 194, § 2; 1855 Ky. Acts 96, ch. 636, § 1; and twentieth century bans on silencers themselves (which were first patented in 1908), *see e.g.*, 1909 Me. L., ch. 129, p. 141; 1912 Vt. Acts & Resolves, No. 237, p. 310; 1913 Minn. L., ch. 64, p. 55; 1927 Mich. Pub. Acts, No. 372, pp. 888-89; 1927 R.I. Pub. L., ch. 1052, p. 259. These historical analogues, even if not "identical" to California's law, flow from the long-understood, "common sense" principle (*Rahimi*, 144 S. Ct. at 1901) that states may prohibit items that pose a heightened danger to society, so long as weapons commonly used for self-defense remain available.

Plaintiff's effort to nit-pick differences with certain historical analogues misses the mark. *See* ECF No. 13 at 3-5. Plaintiff argues, for example, that analogizing laws banning possession of slungshots to the challenged law "falls flat," because "[s]ilencers are nothing like a 'slung shot.'" *Id.* at 5 (citing 1849 N.Y. Laws 403-404, ch. 278, §§ 1-2; 1849 Vt. Acts & Resolves 26, No. 36, §§ 1-2). The analysis under *Bruen* and *Rahimi*, however, is not concerned with the specific

7

similarities between types of weapons, but rather, the underlying principle that supports the historical restrictions. Possession bans for slungshots are "relevantly similar" to California's silencer ban because both concern legislative determinations that the item in question is exceedingly dangerous and should not be possessed by members of the public. *Rahimi*, 144 S. Ct. at 1901; *Bruen*, 597 U.S. at 29-30. And they demonstrate the pertinent principle that is common among all of the historical analogues: exceedingly dangerous weapons may be restricted and banned.

Plaintiff's effort to distinguish bans on sale and manufacture from bans on possession fails for similar reasons. While such laws prohibiting the production or sale of a particular weapon are "by no means identical" to a ban on possession, they flow from the same principle, a legislative recognition that some weapons are too dangerous to be available to the general public. *See Rahimi*, 144 S. Ct. at 1901. A ban on manufacture and sale, as opposed to possession, simply employs a different method of addressing the concern raised by exceedingly dangerous weapons. Both types of regulation are undergirded by a legislative understanding that certain especially dangerous weapons, because of their individual characteristics, should be regulated. California's ban on silencers fits well within this longstanding principle. *Rahimi*, 144 S. Ct. at 1898.

## CONCLUSION

This Court should dismiss Plaintiff's Complaint without leave to amend.

| | | |
|---|---|---|
| 1 | Dated: July 19, 2024 | Respectfully submitted, |
| 2 | | ROB BONTA<br>Attorney General of California |
| 3 | | R. MATTHEW WISE<br>JOHN D. ECHEVERRIA |
| 4 | | Supervising Deputy Attorneys General |
| 5 | | |
| 6 | | KEVIN L. QUADE |
| 7 | | Deputy Attorney General<br>*Attorneys for Defendant Attorney* |
| 8 | | *General Rob Bonta* |

# CERTIFICATE OF SERVICE

Case Name:  **Gary Sanchez v. Rob Bonta**          No.  **24-cv-767-RSH-MSB**

I hereby certify that on <u>July 19, 2024</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

## DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>July 19, 2024</u>, at Sacramento, California.

| Kevin Quade | */s/ Kevin L. Quade* |
|---|---|
| Declarant for eFiling | Signature |

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users. On <u>July 19, 2024</u>, the foregoing document(s) have been mailed in the Office of the Attorney General's internal mail system, by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

Gary R. Sanchez
5941 Rio Valle Drive
Bonsall, CA  92003
***In Pro Per***

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>July 19, 2024</u>, at Sacramento, California.

| K. Nicholson | */s/ K. Nicholson* |
|---|---|
| Declarant for Service by U.S. Mail | Signature |